IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SV INTERNATIONAL, INC.          )
and ECMD, INC.,                 )
                                )
            Plaintiffs,         )
                                )
v.                              )          1:09cv862
                                )
FU JIAN QUANYU INDUSTRY         )
CO., LTD.,                      )
                                )
            Defendant.          )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Before the court is the motion of Plaintiffs SV International, Inc. ("SV International") and ECMD, Inc. ("ECMD") (collectively "Plaintiffs"), to dismiss the counterclaims of Defendant Fu Jian Quanyu Industry Company, Ltd. ("Fu Jian"), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). (Doc. 44.) The motion contends that Fu Jian's patent infringement counterclaim fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) because it is precluded by prior litigation between the parties. It also contends that without the patent infringement counterclaim, this court lacks subject matter jurisdiction over Fu Jian's counterclaim for breach of contract pursuant to Rule 12(b)(1). In the alternative, Plaintiffs move for a more definite

statement of Fu Jian's patent and breach of contract counterclaims pursuant to Rule 12(e).  For the reasons set forth below, the motions will be denied.

## I.   BACKGROUND

Plaintiffs' motion stems from a longstanding dispute between the parties concerning their respective product lines. Both Fu Jian and Plaintiffs manufacture, sell, and/or distribute newel posts that are used to support staircase handrails.  Fu Jian holds the rights to U.S. Patent No. 6,662,519 ("the '519 Patent") through an assignment dated September 25, 2007.  (Doc. 40-1 at 2.) The '519 Patent purports to cover "wooden newel posts" made of a combination of higher and lower quality woods. (Doc. 36-1.)

In 2007, Fu Jian brought suit in the Western District of Wisconsin alleging that ECMD, through its subsidiary Crown Heritage, and retailer Lowe's Company, Inc., were infringing the '519 Patent.  Complaint and Demand for Jury Trial, <u>Fu Jian Quanyu Indus. Co. v. ECMD, Inc.</u>, No. 1:07cv905 (M.D.N.C. Sept. 26, 2007), Doc. 2.  As to ECMD, Fu Jian alleged that it was infringing the '519 Patent "by making, using, importing, offering products for sale, and/or selling products, including wooden Newel Posts manufactured and/or imported by itself or its subsidiary Crown Heritage, which are covered by one or more claims of the '519 Patent."  First Amended Complaint and Demand

for Jury Trial at 2, <u>Fu Jian Quanyu Indus. Co.</u> (No. 1:07cv905), Doc. 20. In response, SV International sued Fu Jian and an affiliate in the Middle District of North Carolina, seeking, among other relief, a declaratory judgment that its products did not infringe Fu Jian's patent. Complaint for Declaratory Judgment of Non-Infringement, Invalidity, and/or Unenforceability of U.S. Patent Nos. 6,582,021 and 6,662,519, <u>SV Int'l Corp. v. Xiamen Quan Yu Wood Prods. Co.</u>, No. 1:07cv754 (M.D.N.C. Oct. 10, 2007), Doc. 1. Fu Jian counterclaimed, alleging that SV International was infringing the '519 Patent "by making, using, importing, offering products for sale, and/or selling products, including wooden Newel Posts manufactured and/or imported by itself or its subsidiaries, which are covered by one or more claims of the Newel Post Patent." Answer to Complaint and Counterclaims at 7, <u>SV Int'l Corp.</u> (No. 1:07cv754), Doc. 15. The parties agreed to transfer the Wisconsin lawsuit to the Middle District of North Carolina, and the two suits were consolidated on September 16, 2008. <u>SV Int'l Corp. v. Xiamen Quan Yu Wood Prods. Co.</u>, No. 1:07cv754 (M.D.N.C. Sept. 16, 2008) (<u>SV International I</u>), Doc. 21.

After engaging in discovery, the parties agreed to settle <u>SV International I</u> and, on March 17, 2009, entered into a

confidential settlement agreement (the "Settlement Agreement").[1]

The Settlement Agreement provided in pertinent part:

---

[1] The parties filed the complete Settlement Agreement under seal pursuant to an Order of this court. (Docs. 37; 43.) However, Fu Jian quoted paragraph 2.e. in full in its Amended Counterclaim (Doc. 36 ¶ 17), so it is already publicly available. The question is whether any other portion of the Settlement Agreement should be disclosed. The parties have been informed of the court's intention and have consented to the disclosure noted herein, which redacts only the monetary amounts of the Settlement Agreement. (Doc. 67.) Thus, the question is whether the monetary amounts of the parties' prior agreement should be disclosed. A court's power over its records is constrained by two separate legal principles: the public's presumptive common-law right of access to judicial records, Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978), and the First Amendment's grant of access to judicial records, Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988) (citing Press Enter. Co. v. Superior Court, 457 U.S. 596, 607 (1982)). The common law right of access applies to "all 'judicial records and documents.'" Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988) (quoting Nixon, 435 U.S. at 597). The First Amendment, on the other hand, only applies to particular records and documents, including documents filed in connection with motions for summary judgment in civil cases. Id. In fact, the Fourth Circuit has noted that the "more rigorous First Amendment standard should . . . apply to documents filed in connection with a summary judgment motion." Rushford, 846 F.2d at 253. Where particular documents are important to a court's decision, the court may either use the information in an opinion or unseal the documents relied upon. See Stone, 855 F.2d at 182 (disclosing portion of sealed record necessary for adjudication of case); Cumberland Packing Corp. v. Monsanto Co., 184 F.R.D. 504, 505 (E.D.N.Y. 1999) ("[A] document submitted as the principal basis for a dispositive motion is given a strong presumption [of public access]."); see also Dorsett v. Cnty. of Nassau, 762 F. Supp. 2d 500, 518 (E.D.N.Y. 2011) (Tomlinson, Mag. J.) ("[T]he presumption in favor of public access to judicial documents will be given the strongest weight possible where the documents played a role in determining the litigants' substantive rights."), aff'd, No. 10-cv-1258 (ADS) (ATK), 2011 WL 3438438 (E.D.N.Y. Aug. 8, 2011).

Here, the court is disclosing those portions of the Settlement Agreement that are integral to its decision on the pending motion to dismiss Fu Jian's patent infringement counterclaim. The court discerns no significant public interest in revealing the amount the parties may have exchanged, and such amounts do not materially affect the court's analysis. Because disclosure of the monetary amounts could subject the parties to a future competitive disadvantage, the court elects not to disclose them in its discussion. See Vista India, Inc. v. Raaga, LLC, No. 07-1262, 2008 WL 834399, at *4 (D.N.J.

2.   <u>SV International's Agreement</u>

        a.   SV International and ECMD will jointly pay Fu Jian [redacted] U.S. within 30 days of the execution of this Agreement.

        b.   SV International and ECMD will jointly pay Fu Jian [redacted] within one year of the execution of this Agreement in addition to the amount paid in 2a.

        c.   SV International will have eighteen months from the date of execution of this Agreement to sell its inventory of newel posts which are the subject of the Proceedings.

        d.   SV International will provide Fu Jian with an inventory of the newel posts subject to the Proceedings within 30 days of the execution of this Agreement.   SV International will give Fu Jian a report each month thereafter of the number of such newel posts that have been sold during the previous month.

        e.   If SV International constructs newel posts with a bottom square made of lower quality wood and a lamella, there must be some lower quality wood in the upper post section.   In addition, if the post has an upper square, it must have a lamella on all four sides of the square.   In this Agreement, the upper post section is defined as the portion above the lower unturned portion.   In this Agreement, "lower quality wood" means wood that is rubber wood and pine wood from plantation forests, high density fiber material, or is off color, blemished, visually dissimilar from surrounding higher quality wood, mineral streaked, sap, wormhole, discolored, or otherwise defective.

---

Mar. 27, 2008) (Salas, Mag. J.) (explaining that the disclosure of the terms of license and settlement agreements could put the parties to those agreements at a competitive disadvantage with future competitors and customers); cf. <u>K.S. v. Ambassador Programs Inc.</u>, No. 1:10CV439, 2010 WL 3565481, at *3 (E.D. Va. Sept. 3, 2010) (rejecting parties' contention that disclosure of settlement amounts would cause a competitive disadvantage where subsequent litigation was unlikely).

(Doc. 41 at 3.) The Settlement Agreement also contained identical mutual releases, which provided in relevant part as to Fu Jian as follows:

> Upon the Parties' dismissal of the Proceedings with prejudice as described above, Fu Jian . . . does covenant not to sue, and releases and discharges SV International, ECMD, and Lowe's and any and all of their customers or subsequent purchasers, including without limitation, from any and all causes of action, claims, and liabilities of any kind or nature whatsoever, at law or in equity, relating to any and all claims that Fu Jian asserted in the Proceedings.

(Id. at 4.) Finally, the Settlement Agreement provided:

> The express undertakings and mutual releases set forth by the Parties in this Agreement do not constitute an admission of liability by any party to the Proceedings.

(Id. at 5.)

Pursuant to the terms of the Settlement Agreement, the parties dismissed their respective claims with prejudice in a filing submitted to this court on April 21, 2009. Stipulation of Dismissal, SV Int'l Corp. (No. 1:07cv754), Doc. 36.

Less than five months later, SV International and ECMD commenced this action against Fu Jian. Plaintiffs allege that Fu Jian has improperly marked newel posts with the '519 Patent even though the newel posts are not covered by the patent in violation of 35 U.S.C. § 292 and that Fu Jian has engaged in unfair or deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1 (2009). Fu Jian counterclaimed, alleging in its

Amended Counterclaim that SV International has been infringing the '519 Patent since March 17, 2009 – the date of the Settlement Agreement – by "making, using, importing, offering products for sale, and/or selling products, including wooden Newel Posts manufactured and/or imported by itself or its subsidiaries, which are covered by one or more claims of the Newel Post Patent." (Doc. 36 at 2.) In addition, Fu Jian alleges that SV International has breached the Settlement Agreement by making wooden newel posts not permitted by it. (Id. at 4.)

Plaintiffs now move to dismiss Fu Jian's counterclaims on the ground that its patent infringement claim is barred by the dismissal in SV International I and, without it, Fu Jian has provided no basis for this court's exercise of federal jurisdiction over Fu Jian's counterclaim for breach of the Settlement Agreement. In the alternative, Plaintiffs move for a more definite statement of both claims. Fu Jian contends that its patent infringement counterclaim is not barred because it is based on conduct that occurred, and thus claims that accrued, after the Settlement Agreement and which were not expressly released. Because the court has jurisdiction over the infringement claim, Fu Jian argues, supplemental jurisdiction exists over its breach of contract counterclaim. Finally, Fu Jian contends that its counterclaims provide sufficient notice

of the products that allegedly infringe or breach the Settlement Agreement so that there is no need for a more definite statement.

Plaintiffs' motions will be addressed in turn.

## II.  ANALYSIS

### A.  Claim Preclusion

Plaintiffs contend that Fu Jian is barred from claiming that Plaintiffs' wooded newel posts infringe the '519 Patent because the first lawsuit, SV International I, involved the same parties, included the same patent infringement claim, and, by virtue of the Settlement Agreement, reached a final judgment on the merits.  The claims are the same, Plaintiffs argue, because both allege infringement of the '519 Patent "by making, using, importing, offering products for sale, and/or selling products, including wooden Newel Posts manufactured and/or imported by itself or its subsidiaries."  (Compare, e.g., Doc. 36 ¶ 6, with Doc. 32-4 at 5-6 ¶ 6.)  Plaintiffs rely on the mutual release provisions of the Settlement Agreement to argue that Fu Jian released all future claims, including the present ones.  If the court declines to grant Plaintiffs' motion as a matter of law, Plaintiffs invite it to consider the affidavit of Robert H. Green, President of a division of ECMD (Doc. 32-5 at 3), which states that all of Plaintiffs' current wooden newel posts are either "identical to" or "essentially the same as" those they

sold at the time of the Settlement Agreement, which Plaintiffs contend proves that Fu Jian's present counterclaim is precluded.[2]

Fu Jian does not contest that the same parties entered into the Settlement Agreement in the prior lawsuit,[3] but it argues, first, that the dismissal of the parties' prior claims with prejudice does not preclude later claims that involve acts of subsequent infringement. As such, because Fu Jian has limited its infringement claims in this lawsuit to events occurring after the March 17, 2009 Settlement Agreement, it contends, its claim is not precluded. Second, Fu Jian argues that if this court does consider materials outside the pleadings, they

---

[2] Ordinarily, a court may not consider materials outside the pleadings without converting a motion to dismiss into one for summary judgment. Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) ("[A]s a general rule extrinsic evidence should not be considered at the 12(b)(6) stage."). An exception exists if a document "was integral to and explicitly relied on in the complaint and [if] the [non-moving party] do[es] not challenge its authenticity." Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999). Here, it is proper for the court to consider the Settlement Agreement without converting Plaintiffs' motion to dismiss into a motion for summary judgment. The Settlement Agreement was attached to Fu Jian's Amended Counterclaim (Doc. 41), the counterclaim explicitly refers to it (Doc. 36 at 4), and nothing in either parties' submissions to the court indicates that they doubt its authenticity. Green's affidavit, on the other hand, is outside the pleadings and will not be considered at this stage in the litigation.

[3] This does not appear to be accurate, however. The present motions are filed on behalf of both Plaintiffs, but Fu Jian's counterclaims in this case name and seek relief only from Plaintiff SV International. It is unclear why ECMD would be seeking to dismiss a counterclaim to which it is not a party. Given the court's disposition of the pending motions infra, ECMD's standing to request a dismissal appears to be moot. However, because both Plaintiffs are referred to in the briefing, the court will continue to attribute their arguments to both of them herein.

demonstrate that the parties only intended to resolve their disagreement up to that time and never intended to resolve claims for future infringement. Third, Fu Jian argues that the purpose of paragraph 2.e. of the Settlement Agreement was to impose restrictions on the types of wooden newel posts SV International may make that supplement the restrictions in the '519 Patent. (Doc. 49 at 12-13.)

Rule 12(b)(6) permits parties to move to dismiss claims that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a motion under Rule 12(b)(6) is to test the legal sufficiency of a complaint. Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). As such, a Rule 12(b)(6) motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). Instead, the "claim[] must be construed in the light most favorable to the non-moving party," Martin Marietta Corp. v. Int'l Telecomm. Satellite Org., 991 F.2d 94, 97 (4th Cir. 1992), and the claim must contain "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).[4]

---

[4] Fu Jian's brief relies on Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999), to contend that a complaint should be dismissed only when "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." (Doc. 49 at 5.) In Twombly, the Supreme Court explained

Of course, like all claims, counterclaims are subject to motions to dismiss. See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172, 178 (1965).

Claim preclusion is a proper ground for bringing a motion to dismiss under Rule 12(b)(6). Andrews v. Daw, 201 F.3d 521, 524 n.1 (4th Cir. 2000). Under the doctrine of claim preclusion, a claim in a prior lawsuit will bar a subsequent claim if the party moving for claim preclusion can demonstrate three elements: (1) the parties in the two actions are identical or are in privity; (2) the judgment in the first action was a final judgment on the merits; and (3) the "claims in the two actions are identical." Bouchat v. Bon-Ton Dep't Stores, Inc., 506 F.3d 315, 326-27 (4th Cir. 2007). Here, the parties do not contest that the same parties in the first lawsuit are involved in the present litigation (although, as noted in footnote 3 supra, ECMD is not named in the present counterclaim). In addition, the Fourth Circuit recognizes that when a prior suit is dismissed with prejudice – as was SV International I – the

---

that the "no set of facts" language "is best forgotten as an incomplete, negative gloss on an accepted pleading standard." 550 U.S. at 562-63; see also Ferdinand-Davenport v. Children's Guild, 742 F. Supp. 2d 772, 779 n.4 (D. Md. 2010) (citing Twombly to reject language suggesting a motion to dismiss should be granted only if "it is certain that no relief could be granted under any set of facts provable by the plaintiff").

judgment is a final judgment on the merits.[5]  <u>Kenny v. Quigg</u>, 820

F.2d 665, 669 (4th Cir. 1987).  Plaintiffs argue that Fu Jian's

infringement counterclaim is the same claim Fu Jian made in the

prior litigation and thus meets the third prong of the claim

preclusion test.

Plaintiffs bear the burden of demonstrating that the two

claims are identical.  <u>Young Eng'rs, Inc. v. U.S. Int'l Trade

Comm'n</u>, 721 F.2d 1305, 1316 (Fed. Cir. 1983).  While the court

looks to Fourth Circuit law as to general principles of claim

preclusion,[6] Plaintiffs are correct to note that whether two

patent infringement claims are identical is an issue specific to

patent law and, thus, must be governed by legal principles

---

[5] Fu Jian does not contest that the dismissal of <u>SV International I</u>
with prejudice operates as a final judgment on the merits.  <u>See Hallco
Mfg. Co. v. Foster</u>, 256 F.3d 1290, 1297 (Fed. Cir. 2001) (finding that
a dismissal with prejudice supported by a settlement agreement "is a
judgment on the merits").  Plaintiffs do not contest Fu Jian's
assertion that any claim preclusion should be based on the date of the
Settlement Agreement and not the stipulation of dismissal.  The
Settlement Agreement provides that its effective date is March 17,
2009.  (Doc. 41 at 2.)  Therefore, the court will apply this date for
any preclusive effect of <u>SV International I</u>.  <u>See Johnson v. Ashcroft</u>,
445 F. Supp. 2d 45, 50 (D.D.C. 2006) (applying res judicata to claims
that arose between litigants before the effective date of their
underlying settlement agreement).

[6] The Federal Circuit has recognized that there is "no significant
difference" with respect to the applicable law of claim preclusion
between the Federal Circuit and a regional circuit that applies the
Restatement (Second) of Judgments approach for determining whether
causes of action in two lawsuits are the same for claim preclusion
purposes.  <u>Acumed LLC v. Stryker Corp.</u>, 525 F.3d 1319, 1323 n.3 (Fed.
Cir. 2008).  Both the Federal Circuit and the Fourth Circuit have
adopted the Restatement (Second) approach.  <u>Young Eng'rs</u>, 721 F.2d at
1314; <u>Pittston Co. v. United States</u>, 199 F.3d 694, 704 (4th Cir. 1999)
(citing <u>Restatement (Second) of Judgments</u> § 24 (1982)).

established by the Federal Circuit.  See Acumed LLC v. Stryker Corp., 525 F.3d 1319, 1323 (Fed. Cir. 2008).  The question is "whether the claim presented in the new litigation 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment.'"  Pittston Co. v. United States, 199 F.3d 694, 704 (4th Cir. 1999) (quoting Harnett v. Billman, 800 F.2d 1308, 1313 (4th Cir. 1986)).  Thus, Plaintiffs here must demonstrate that Fu Jian's counterclaim for patent infringement arises from the same transaction or series of transactions as the patent infringement claim presented in SV International I.

In attempting to do so, Plaintiffs rely primarily on three cases.  The first two cases, Hallco Manufacturing Co. v. Foster, 256 F.3d 1290 (Fed. Cir. 2001), and Roche Palo Alto LLC v. Apotex, Inc., 531 F.3d 1372 (Fed. Cir. 2008), Plaintiffs argue, establish that claim preclusion prevents a party from bringing a patent infringement claim as to any product that is the same or essentially the same as that involved in a prior infringement lawsuit between the parties.  Insofar as the allegations in both of Fu Jian's counterclaims are identical, Plaintiffs contend, the lawsuits must involve the same (or essentially the same) products; therefore, the present claim must be precluded. Hallco and Roche, however, are not on point.

In Hallco Manufacturing, the owner of a patent for reciprocal conveyors sued Hallco for infringement as to Hallco's "4000" and "6000" products, and Hallco raised invalidity defenses. The district court (after an interim appeal) granted summary judgment for the patent holder, finding infringement, and the parties settled, with Hallco taking a non-exclusive, royalty-bearing license. Thereafter, Hallco sued the patent holder for a declaratory judgment of non-infringement as to redesigned products and contested the validity of the patent. The patent holder argued that Hallco's challenges were precluded by the first lawsuit, but the district court disagreed. On appeal, the Federal Circuit vacated the district court's decision, finding that on remand the district court should compare the products in the two cases, and if it found that the two devices were "essentially the same or only colorably different," Hallco would be precluded from challenging non-infringement or validity. Hallco Mfg., 256 F.3d at 1298.

In Roche, Roche (and its affiliates) sued Apotex Corporation, alleging that the latter's drug application infringed Roche's patent, and Apotex raised invalidity defenses. The district court found, on summary judgment, that Apotex's drug formulation infringed Roche's patent, and after a bench trial the court rejected Apotex's invalidity claim. Thereafter, Roche sued Apotex, alleging that a new drug application filed by

14

Apotex infringed its patent, and Apotex again raised invalidity defenses. The district court found infringement and granted Roche's motion for summary judgment, and the Federal Circuit affirmed. The Federal Circuit held that Apotex's new product formulation fell within the literal scope of the first drug application found to be infringing and that Apotex failed to establish non-infringement under the reverse doctrine of equivalents. Consequently, Apotex's invalidity and unenforceability challenges were barred by claim preclusion. <u>Roche</u>, 531 F.3d at 1380-81.

Both of these cases involved an initial finding on the merits that a product infringed the patent at issue and concerned an attempt in a subsequent case to find non-infringement and to contest the patent's validity. If the newly accused products were essentially the same as those previously held to be infringing, the courts reasoned, they arise from the same transaction; thus, whether they infringe has been determined by judgment, and any challenge to the validity or infringing nature of the product cannot be re-litigated.[7]

---

[7] These cases addressed claim preclusion as applied to invalidity defenses. As noted by the Federal Circuit, "'[t]he public interest requires that an invalid patent be [held invalid] at as early a date as possible.'" <u>Foster v. Hallco Mfg. Co.</u>, 947 F.2d 469, 476 (Fed. Cir. 1991) (second alternation in original) (quoting <u>Schlegel Mfg. Co. v. USM Corp.</u>, 525 F.2d 775, 781 (6th Cir. 1975)). Thus, once a court determines (or could have determined) the validity of a patent, the defense is precluded in further litigation between the parties as to the same claim. If parties "were given a second chance to litigate

Neither case reached the issue here: namely, whether, after the parties settle an initial, broadly worded infringement claim (e.g., attacking "products, including wooden Newel Posts" covered by the '519 Patent) without an express finding of infringement or invalidity and dismiss it with prejudice, a new, identically worded infringement claim based on post-settlement acts is precluded.  As a result, these cases do not control the outcome of this motion to dismiss.

Plaintiffs next point to _Acumed_ for the proposition that where a patent infringement claim relates to the same products accused in an earlier infringement claim, the second claim is precluded.  In _Acumed_, Acumed sued Stryker, alleging that its T2PHN surgical device infringed Acumed's patent.  During discovery, Acumed learned that a longer version of the Stryker T2PHN product existed and considered adding a claim of infringement as to it but declined doing so because it would delay the impending trial.  The case was tried to a jury, which found that the T2PHN device infringed.  Thereafter, Acumed sued Stryker, alleging that the longer version of the T2PHN product infringed the same patent.  Stryker moved to dismiss the claim on the grounds it was precluded by the judgment in the first case, and the district court agreed.  On appeal, the Federal

the issue of validity, alleged infringers might well accept a license under a consent decree and forego an attack on validity until" a more opportune time.  _Id._ at 476-77.

Circuit reversed, holding that the "two claims for patent infringement do not arise from the same transactional facts unless the accused devices in each claim are 'essentially the same.'" Id. at 1326 (quoting Foster v. Hallco Mfg. Co., 947 F.2d 469, 479-80 (Fed. Cir. 1991)). The court held that, because Stryker conceded that the two products were not essentially the same, Stryker failed to meet its burden of demonstrating that the infringement claim in the first action was the same as the infringement claim in the second action.

Plaintiffs argue that whereas Acumed rejected claim preclusion because the products were not essentially the same, the pleadings in the present case, which repeat nearly verbatim the allegations of SV International I, demonstrate that Fu Jian's infringement counterclaim relates to the exact same products. (Doc. 45 at 6.) Thus, Plaintiffs argue, the present case is the precise scenario that Acumed contemplated for claim preclusion. Again, Plaintiffs misread the opinion.

Importantly, the Acumed court noted that whether devices are the same is a determination of only "one of the essential transactional facts giving rise to a patent infringement claim." Acumed, 525 F.3d at 1326. Thus, the court tacitly recognized that device equivalence is a necessary but not sufficient condition for claim preclusion. Because it found that the devices were not essentially the same, the court had no reason

to reach the issue of whether and to what extent, if the devices were the same, a patent infringement claim seeking damages accruing after a previous judgment would be precluded. Here, Fu Jian's patent infringement counterclaim is limited to conduct after <u>SV International I</u> was settled, and thus <u>Acumed</u> is not on point.

Because these three cases fail to support Plaintiffs' arguments, the court turns to the merits of Plaintiffs' claim preclusion contentions. Plaintiffs contend that Fu Jian's infringement counterclaim in <u>SV International I</u> adjudicated all of Fu Jian's claims (and those that it could have brought) as to all of Plaintiffs' wooden newel posts and that Fu Jian's identically worded present counterclaim (i.e., "products, including wooden Newel Posts . . . , which are covered by one or more claims of the Newel Post Patent" (Doc. 36 at 2)), is thus barred.

Under general claim preclusion rules, all claims that were brought or could have been brought in a prior claim are precluded in subsequent litigation. <u>Ohio Valley Envtl. Coal. v. Aracoma Coal Co.</u>, 556 F.3d 177, 210 (4th Cir. 2009), <u>cert. dismissed</u>, 131 S. Ct. 51 (2010). Although Fu Jian's patent infringement counterclaim in <u>SV International I</u> employed the same broad language as the current infringement counterclaim that accuses SV International of wrongdoing, ordinary

application of claim preclusion rules will not bar subsequent litigation over subsequent conduct. This is because claim preclusion generally does not apply to acts that occur after a lawsuit is ended – even if the new lawsuit alleges violations of the same legal rights. See Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 328 (1955). As the Fourth Circuit has explained, "res judicata has very little applicability to a fact situation involving a continuing series of acts, for generally each act gives rise to a new cause of action." Crowe v. Leeke, 550 F.2d 184, 187 (4th Cir. 1977). Holding otherwise would "entitle the [wrongful actor] to continue or repeat the unlawful conduct with immunity from further suit" by virtue of a prior suit on the same legal theory. Smith v. Potter, 513 F.3d 781, 783 (7th Cir. 2008).

Lawlor is the leading case. There, the plaintiffs raised antitrust claims against the defendants in successive suits. An initial lawsuit alleging antitrust violations was settled by agreement, with the defendants providing certain motion picture products to plaintiffs in exchange for an exclusive license, and the lawsuit was dismissed with prejudice. The same plaintiffs then sued the same defendants (as well as others), alleging that the settlement was merely a device to perpetuate a conspiracy and monopoly and that five other producers joined the conspiracy after the settlement. The district court dismissed the lawsuit

based on claim preclusion, but the Supreme Court reversed. According to the Court, although both suits "involved 'essentially the same course of wrongful conduct,'" that fact was "not decisive" because the first suit could not bar claims that arose after the original settlement agreement. Lawlor, 349 U.S. at 327-28. Because the two suits involved antitrust violations at different points in time, the suits did not involve the same cause of action.

Lawlor's principle has been applied in the patent infringement context. In Cordis Corp. v. Boston Scientific Corp., 635 F. Supp. 2d 361 (D. Del. 2009), the court was faced with deciding whether the plaintiff's claim that the defendant's product infringed the plaintiff's patent was barred by the plaintiff's previous lawsuit against the defendant for patent infringement as to the same product. Id. at 364, 366. In concluding that "claim preclusion [did] not bar" the subsequent suit, the court noted that "[t]he conduct at issue in this litigation occurred after the first judgment and could not possibly have been sued upon in the [prior case]."[8] Id. at 370.

---

[8] Cordis admittedly involved a more extreme case, because there the newly-accused product had not been awarded final regulatory approval at the time of the first lawsuit, and the plaintiff could not have accurately predicted the level of sales or availability of non-infringing alternatives three years prior to the product's launch. 635 F. Supp. 2d at 370. These facts do not undermine the legal principle as applied, however.

Similarly, in <u>Williams v. Gillette Co.</u>, 887 F. Supp. 181 (N.D. Ill. 1995), a plaintiff's patent infringement suit was dismissed with prejudice after the parties entered into a settlement agreement, but the agreement did not determine whether the defendant's products infringed the plaintiff's patents. Thereafter, the plaintiff sued the defendant a second time, claiming that the defendant's continued sale of those same products after the first suit settled constituted new infringement of her patent. Citing <u>Lawlor</u>, the district court held that because Williams sought "only damages for infringement after the dismissal of the [first] lawsuit," the suit was not barred by claim preclusion.[9] <u>Id.</u> at 184.

Because the plaintiffs in <u>Lawlor</u>, <u>Cordis</u>, and <u>Williams</u> limited their claims to acts occurring after the judgment in the first lawsuit, claim preclusion did not bar their claims. Likewise, under general rules of claim preclusion, the prior dismissal with prejudice of Fu Jian's patent infringement counterclaim in <u>SV International I</u> would not bar Fu Jian's

---

[9] In finding no claim preclusion for claims of post-judgment infringement, the <u>Williams</u> court's analysis reinforces why <u>Acumed</u> does not help Plaintiffs here. <u>Williams</u> recognized that having the same device is a "necessary but not sufficient condition to apply claim preclusion" and distinguished <u>Foster v. Hallco Manufacturing Co.</u>, 947 F.2d 469 (Fed. Cir. 1991), on the ground that "[t]he <u>Foster</u> court had no occasion to address the issue here, namely, whether the <u>Lawlor</u> rule applies to a patent case seeking damages for infringement accruing after a judgment in a previous case." <u>Williams</u>, 887 F. Supp. at 185.

present claim seeking redress only for post-dismissal acts of infringement.

### 1. Effect of the Mutual Release

Nevertheless, Plaintiffs argue that the mutual release provision of the Settlement Agreement precludes Fu Jian's present infringement claim against products that existed at the time of the first suit. In doing so, Plaintiffs rely on <u>Pactiv Corp. v. Dow Chemical Co.</u>, 449 F.3d 1227 (Fed. Cir. 2006), to argue that a dismissal with prejudice bars future claims unless the parties expressly *preserve* them in their settlement agreement, which Plaintiffs contend Fu Jian failed to do in the mutual release.[10]    (Doc. 54 at 6-7.)    In advancing their

---

[10] Fu Jian, in contrast, argues that because claim preclusion does not apply to its present claims (because they involve new conduct post-dating the prior lawsuit) and <u>SV International I</u> was resolved by settlement, the question of whether the Settlement Agreement bars any future claims is one of "issue preclusion."   More specifically, Fu Jian contends that Plaintiffs are actually arguing that the dismissal of <u>SV International I</u> determined the issue of whether SV International's wooden newel posts "extant at the time" that case commenced infringed the '519 Patent. (Doc. 49 at 10-11.) Fu Jian contends that if this is Plaintiffs' argument, this issue was not actually litigated and Plaintiffs are therefore barred from looking to the Settlement Agreement to preclude the counterclaim against their products.   The only exception, it contends, is where, even though an issue was not actually litigated, the parties' settlement agreement, when narrowly construed, manifests a clear intent to resolve the issue conclusively.   Here, Fu Jian concludes, the Settlement Agreement, properly construed, reflects the parties' intent to settle infringement claims up to that date, and no more. (<u>Id.</u> at 12-13.)

Under issue preclusion, a party is prevented from re-litigating an issue it has already litigated and lost, and the moving party must demonstrate five elements: (1) the issue to be precluded is identical to an issue in a previous suit; (2) issue was actually determined; (3) the issue was "a critical and necessary" part of the determination in the prior proceeding; (4) the prior judgment was final and valid; and

arguments, however, Plaintiffs seek to have _Pactiv_ and the mutual release provision carry more weight than they can bear.

In _Pactiv_, Dow sued Pactiv for patent infringement, and Pactiv raised invalidity and unenforceability counterclaims. The parties reached a settlement in which Dow granted Pactiv a license requiring royalty payments to Dow, and the case was dismissed with prejudice pursuant to a joint stipulation. Five years later, Pactiv ceased making its royalty payments and sought a declaration that Dow's patents were invalid and unenforceable. The district court held that Pactiv's challenges were barred by claim preclusion. In affirming, the Federal Circuit concluded that Pactiv did "not expressly reserve the

---

(5) the non-moving party "had a full and fair opportunity to litigate the issue in the previous forum." _Collins v. Pond Creek Mining Co._, 468 F.3d 213, 217 (4th Cir. 2006) (internal citations and quotation marks omitted). Claim preclusion, in contrast, is much broader and "bar[s] the relitigation of any issue that was, or might have been, raised in respect to the subject matter of the prior litigation." _Sutliffe v. Epping Sch. Dist._, 584 F.3d 314, 328 (1st Cir. 2009) (internal emphasis, citations, and quotation marks omitted).

In _SV International I_, Fu Jian's claim that Plaintiffs' "products, including wooden Newel Posts" infringed its '519 was raised and was disposed of by the Settlement Agreement and dismissal with prejudice. The Federal Circuit appears to have addressed such cases as ones of claim preclusion. _See, e.g._, _Nystrom v. Trex Co._, 580 F.3d 1281 (Fed. Cir. 2009). Moreover, the premise of Fu Jian's argument – that the parties only addressed the wooden newel posts extant at the time _SV International I_ commenced – is contrary to the express terms of paragraph 2.e. of the Settlement Agreement (providing that "[i]f SV International constructs newel posts . . . "), which clearly contemplates the future manufacture of products. Even assuming this to be a question of issue preclusion, Fu Jian acknowledges that the court may look to a consent settlement where the parties have clearly indicated their intention to give the document preclusive effect. _United States v. Sherwin-Williams Co._, 165 F. Supp. 2d 797, 803 (C.D. Ill. 2001). Here, the court determines that the parties did just that as to paragraph 2.e. of the Settlement Agreement, as noted _infra_.

right to maintain future invalidity and enforceability
challenges." _Pactiv_, 449 F.3d at 1232. Thus, Pactiv was barred
from challenging the validity of the patents at issue as to
those infringement claims.

_Pactiv_ differs significantly from the present case. Pactiv
had the opportunity to challenge the validity of the patent in
the first lawsuit but settled that claim by agreeing to a
license and royalty payments. The parties agreed that under
rules of claim preclusion, the dismissal of the first lawsuit
with prejudice normally would bar re-litigation of the
invalidity defenses as to those infringement claims. _Id._ at
1230-31. However, the court acknowledged that an exception
exists if the parties expressly "reserve the right to litigate a
claim that would otherwise be barred by res judicata." _Id._ at
1231 (citing Restatement (Second) of Judgments § 26 cmt. a
(1982)). Not only did Pactiv not reserve the right to re-
litigate its validity challenge, the court found, the settlement
agreement expressly waived "all claims 'relating to' those
patents."[11] _Id._ at 1232. In this respect, _Pactiv_ is like the

---

[11] Plaintiffs also rely on language in _Hallco_ to support their argument
that the failure to expressly reserve a claim in a settlement
agreement precludes the claim in later litigation. As noted, however,
_Hallco_ is distinguishable in the same way as _Pactiv_. The party
asserting invalidity in _Hallco_ was precluded from later doing so
because it had raised the argument in a prior lawsuit, accepted a
royalty-bearing license in a settlement agreement, and failed to
expressly reserve the right to sue at a later date. 256 F.3d at 1293,
1297.

other cases that apply claim preclusion in the context of an invalidity defense rather than an infringement claim.[12]  It does not support the construction Plaintiffs urge; namely, that any subsequent infringement claim is precluded unless it is expressly preserved.  This is because a later infringement claim based on new conduct would not "otherwise be barred by res judicata" under the <u>Lawlor</u> rule.  <u>Cf.</u> <u>Pactiv</u> at 1231.

Moreover, Plaintiffs' effort to construe the Settlement Agreement to have released all future claims that Fu Jian might have against their wooden newel posts fails.  To determine the preclusive effect of a lawsuit resolved by agreement, the court may look to a settlement agreement to examine whether the parties expressed their intent to foreclose future litigation. <u>Keith v. Aldridge</u>, 900 F.2d 736, 740 (4th Cir. 1990) (analyzing claim preclusion as applied to a prior consent judgment); <u>see also</u> <u>Greenberg v. Bd. of Governors of the Fed. Reserve Sys.</u>, 968 F.2d 164, 168 (2d Cir. 1992) ("The preclusive effect of a settlement is measured by the intent of the parties to the settlement."); <u>Hallco Mfg.</u>, 256 F.3d at 1297 (finding that "there is no legally dispositive difference for claim preclusion purposes between a consent judgment based on a settlement . . . and a dismissal with prejudice which is based on a settlement");

---

[12] <u>See</u> <u>supra</u> note 7.

Langton v. Hogan, 71 F.3d 930, 935 (1st Cir. 1995) ("A judgment that is entered with prejudice under the terms of a settlement, whether by stipulated dismissal, a consent judgment, or a confession of judgment, is not subject to collateral attack by a party or a person in privity, and it bars a second suit on the same claim or cause of action."). This court's objective, therefore, is to determine the intent of the parties based on the plain language of the contract, and in doing so the court must apply contract principles.[13] Keith, 900 F.2d at 741. Where "the parties intended to foreclose through agreement litigation of a claim, assertion of that claim in a later suit, whether or not formally presented in an earlier action, is precluded." Id.

Here, the mutual release provision merely discharged Plaintiffs "from any and all causes of action, claims, and liabilities . . . relating to any and all claims that Fu Jian asserted in the Proceedings." (Doc. 41 at 4.) Since Fu Jian at that time could not have asserted damages claims for future acts of infringement, the Settlement Agreement does not bar Fu Jian from raising such claims now. Indeed, the Settlement Agreement reflects that the parties contemplated the opposite, recognizing that future acts of infringement were possible. Paragraph 2.e of the Settlement Agreement, after all, specifically addresses

---

[13] The Settlement Agreement states that it should be governed by the law of North Carolina, but no party has argued that this affects the result in any way.

how SV International should manufacture wooden newel posts to avoid infringing the '519 Patent. (Doc. 41 at 3.)

In summary, Plaintiffs' attempt to bar Fu Jian's counterclaim on the basis of the mutual release contained in the Settlement Agreement is unavailing, and the general principle that claim preclusion does not bar suits for post-judgment acts of infringement continues to apply to Fu Jian's counterclaim.

### 2. Applicability of Other Provisions of the Settlement Agreement

This leaves the question of whether any other portion of the Settlement Agreement, when viewed in the context of claim preclusion, manifests an intent to preclude Fu Jian from bringing its present infringement counterclaim. Here, the parties' Settlement Agreement divides SV International's products into two categories. Paragraphs 2.a. through 2.d. refer to (but do not define) wooden newel posts that "are the subject of the Proceedings." Paragraph 2.e. describes wooden newel posts that, if designed according to the description therein, will be permitted to be sold and thus ostensibly do not infringe the '519 Patent to that extent. Plaintiffs do not argue that the former provision in itself carries any preclusive effect,[14] so the court addresses only the latter.

---

[14] Plaintiffs' argument is only that the extrinsic evidence and paragraphs 2.a. through 2.e. demonstrate that in SV International I Fu Jian claimed patent infringement as to all of Plaintiffs' products and that the parties divided them into certain groups described in the

Paragraph 2.e. of the Settlement Agreement identifies a type of wooden newel post that Fu Jian will permit Plaintiffs to make and sell and thus ostensibly would not infringe the '519 Patent: specifically, a wooden newel post with a square bottom where both the bottom and upper sections are made from lower quality wood. (Id. at 3.) This paragraph is consistent with the Settlement Agreement provision that states that nothing in

Settlement Agreement. (Doc. 54 at 5-6.) For example, the parties explain that, pursuant to the Settlement Agreement, six wooden newel post product numbers were identified that ultimately constituted the products that were the "subject of the Proceedings." (Docs. 49 at 12; 54 at 5-6; 41-1 at 1, 4.) Plaintiffs refer to paragraphs 2.a. through 2.d. only to support their previous argument that because SV International I involved all of its newels, the dismissal of that case with prejudice precludes Fu Jian's present counterclaim. The court has rejected Plaintiffs' argument that the mere fact that the first litigation may have involved all of Plaintiffs' wooden newel posts as insufficient to require claim preclusion for alleged infringement that post-dates the dismissal, and the court therefore need not consider any extrinsic evidence that might otherwise convert this motion into one for summary judgment.

    Of course, paragraphs 2.a. through 2.d by their express terms provide SV International the right to sell its inventory of newel posts that were determined to be the "subject of the Proceedings" for eighteen months from the date of the Agreement. (Doc. 41, ¶ 2.c.) "[A]n authorized sale of a patented product places that product beyond the reach of the patent." Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993); cf. De Forest Radio Tel. & Tel. Co. v. United States, 273 U.S. 236, 241 (1927) ("Any language used by the owner of the patent, or any conduct on his part exhibited to another, from which that other may properly infer that the owner consents to his use of the patent in making or using it, or selling it, upon which the other acts, constitutes a license, and a defense to an action."); McCoy v. Mitsuboshi Cutlery, Inc., 67 F.3d 917, 920 (Fed. Cir. 1995) (same); Anton/Bauer, Inc. v. PAG, Ltd., 329 F.3d 1343, 1350 (Fed. Cir. 2003) (explaining that an express or implied license is a defense to patent infringement). Thus, this grant to SV International, permitting it to sell certain potentially-infringing newels, limits Fu Jian's patent rights as to those products for the eighteen month period. Fu Jian seems to acknowledge this limitation in its briefing. (Doc. 49 at 12-13.)

it "constitute[s] an admission of liability by any party." (Id.
at 5.) It resolves what is not infringing, is supported by a
dismissal with prejudice, and therefore can have preclusive
effect. Hallco Mfg., 256 F.3d at 1297.

Under the doctrine of claim preclusion, where a prior
judgment has determined that a particular product does not
infringe a particular patent, the patent holder is precluded
from raising another infringement claim against products that
are the same or essentially the same. In Nystrom v. Trex Co.,
580 F.3d 1281 (Fed. Cir. 2009), for example, a prior lawsuit
determined that Trex's products did not infringe Nystrom's
patent. When Nystrom brought a second infringement suit against
Trex's second-generation products, the court held that claim
preclusion barred Nystrom's claim because the second-generation
products were the same or essentially the same as the first
generation products. The court concluded that "[w]here an
accused infringer has prevailed in an infringement suit, 'the
accused devices have the status of noninfringements, and the
defendant acquires the status of a noninfringer to that
extent.'" Id. at 1285 (quoting Young Eng'rs, 721 F.2d at 1316).
Or as the Federal Circuit explained in another case, "[i]f a
patent owner has unsuccessfully attacked an alleged infringer
for the same infringing acts in a prior court proceeding, no
substantive argument has been advanced as to why the patent

owner should be given an opportunity to put forth the same charge of infringement again." <u>Young Eng'rs</u>, 721 F.2d at 1315.

Nystrom and <u>Young Engineers</u> therefore make clear that any product that is the same or essentially the same as a product found to be non-infringing in a prior claim cannot be the subject of a later infringement suit under the doctrine of claim preclusion. "Accused devices are 'essentially the same' where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'" <u>Acumed</u>, 525 F.3d at 1324.

The court concludes, therefore, that Fu Jian is precluded from basing any patent infringement claim against SV International on a design permitted under paragraph 2.e. of the Settlement Agreement. Of course, whether a particular product is the same or essentially the same as those described within paragraph 2.e. is a question of fact that cannot be determined at the motion to dismiss stage. <u>Andrew v. Clark</u>, 561 F.3d 261, 267 (4th Cir. 2009) (explaining that disputed issues of material fact cannot be decided on a motion to dismiss pursuant to Rule 12(b)(6)); <u>Bosinger v. U.S. Airways, Inc.</u>, 510 F.3d 442, 450 (4th Cir. 2007) (explaining that a district court may not resolve factual questions without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment under Rule 56). While this court has the discretion to convert a

motion to dismiss into a motion for summary judgment, see George v. Kay, 632 F.2d 1103, 1106 (4th Cir. 1980), it declines to do so on the current record.[15]

### 3. Conclusion

The dismissal of SV International I with prejudice resolved litigation between SV International and Fu Jian, who are also parties to Fu Jian's present counterclaim for patent infringement, and constitutes a final judgment. Fu Jian's current infringement counterclaim against SV International as to any of the latter's products made or sold after the date of the Settlement Agreement is precluded only to the extent the claim bases liability on a design that is the same or essentially the same as that described within paragraph 2.e. of the Settlement Agreement (which was determined to be non-infringing to that extent).[16] To determine whether Fu Jian's counterclaim for

---

[15] Of course, infringement claims may not be barred as to products that are different from and not in existence at the time of those made the subject of an earlier patent infringement claim. See Del Mar Avionics, Inc. v. Quinton Instrument Co., 836 F.2d 1320, 1324 (Fed. Cir. 1987) ("[A]bsent a prior determination of infringement with respect to [a new device], neither res judicata nor issue preclusion applied. A device not previously before the court, and shown to differ from those structures previously litigated, requires determination on its own facts."); Young Eng'rs, 721 F.2d at 1316-17 (explaining that patent infringement claims against "'new' models" not in existence at the time of a prior infringement suit could not be barred by the prior litigation where they were not essentially the same as those in the prior suit).

[16] The parties have not argued, and thus the court need not decide, whether paragraph 2.e. has any preclusive effect beyond that noted: that is, whether products essentially the same as those described in paragraph 2.e. cannot be the basis of any claim they infringe the '519

31

patent infringement is barred in any respect, the court will need to make a factual determination whether SV International's products are the same or essentially the same as those described in paragraph 2.e. of the Settlement Agreement. Such a determination cannot be made at the motion to dismiss stage. See Smith v. Smith, 589 F.3d 736, 740 (4th Cir. 2009) (finding error where the trial court examined issues of fact when considering a motion to dismiss). Accordingly, Plaintiffs' motion to dismiss Fu Jian's patent infringement counterclaim for failure to state a claim upon which relief can be granted will be denied.

**B. Subject Matter Jurisdiction over Settlement Agreement**

Plaintiffs move under Federal Rule of Civil Procedure 12(b)(1) to dismiss Defendant's counterclaim for breach of the parties' Settlement Agreement, claiming that this court lacks subject matter jurisdiction to adjudicate Fu Jian's state law breach of contract counterclaim. According to Plaintiffs, if the court dismisses Fu Jian's patent infringement counterclaim for failure to state a claim, this court lacks subject matter jurisdiction over the state law counterclaim. (Doc. 45 at 9.) Plaintiffs concede, however, that if the court chooses not to dismiss Fu Jian's patent infringement counterclaim, it may

_____

Patent at all. And, as noted, patent liability cannot be based on the sales expressly permitted by paragraphs 2.a. through 2.d. of the Settlement Agreement.

properly exercise supplemental jurisdiction over the breach of contract counterclaim. (Id.)

Federal courts exercise limited jurisdiction, as "authorized by Article III of the Constitution and the statutes enacted by Congress." Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). Congress has provided that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). As a result, federal courts may resolve "state law claims over which federal courts would otherwise lack jurisdiction, so long as they form part of the same case or controversy as the federal claims." Shanaghan v. Cahill, 58 F.3d 106, 109 (4th Cir. 1995) (citing United Mine Workers of Am. v. Gibbs, 383 U.S. 715 (1966)). Whether to exercise jurisdiction over a state law claim, however, is a matter left to the discretion of the district court. Id.

In this case, the court has original jurisdiction over Fu Jian's patent infringement counterclaim. 28 U.S.C. § 1338(a) (granting to district courts "original jurisdiction" over "any civil action arising under any Act of Congress relating to

patents"). Because the court will deny (at this stage) Plaintiffs' motion to dismiss Fu Jian's patent infringement counterclaim, the court retains jurisdiction over the breach of the Settlement Agreement counterclaim not only because Plaintiffs concede as much, but because the breach of contract claim arises out of the same case or controversy. See Crater Corp. v. Lucent Techs., Inc., 255 F.3d 1361, 1369-70 (Fed. Cir. 2001) (concluding that where the district court has "original jurisdiction over [a] case" because of a patent infringement claim, the court also has discretion to exercise "supplemental jurisdiction over [plaintiff] Crater's state law claims for breach of contract . . . because those claims 'form part of the same case or controversy'" (quoting 28 U.S.C. § 1367(a))); Madey v. Duke Univ., 307 F.3d 1351, 1364 (Fed. Cir. 2002) (holding that because plaintiff's patent infringement claim was still viable, the district court could have exercised supplemental jurisdiction over plaintiff's state law breach of contract claim).

Here, Fu Jian's patent infringement and breach of contract claims both arise from the method in which Plaintiffs construct their wooden newel posts and will likely involve the introduction of similar evidence. See 16 James Wm. Moore Moore's Federal Practice – Civil § 106.23 (3d ed. 2011) (explaining that one basis for exercising supplemental

jurisdiction is the need to "avoid duplicative evidence" for the sake of judicial economy).  Accordingly, the court exercises its discretion to retain the infringement claim, and Plaintiffs' motion to dismiss the breach of contract counterclaim for lack of subject matter jurisdiction will be denied.

### C.  Motion for a More Definite Statement

In the alternative, Plaintiffs move for a more definite statement of Fu Jian's patent infringement and breach of contract counterclaims.  According to Plaintiffs, Fu Jian fails to specify which of SV International's products allegedly infringe the '519 Patent or breach the Settlement Agreement.  Plaintiffs contend that this vagueness prevents them from framing an accurate response to the counterclaim.

Federal Rule of Civil Procedure 12(e) permits a party to "move for a more definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  The purpose of Rule 12(e) is to ensure that the moving party has adequate notice of the opposing party's claim so that it can prepare a responsive pleading.  Armstrong v. Snyder, 103 F.R.D. 96, 100 (E.D. Wis. 1984) (citing Equal Emp't Opportunity Comm'n v. Gen. Electric Co., 370 F. Supp. 1258, 1259 (W.D. Va. 1973)).  Lack of detail in a complaint is not enough to sustain a motion for a more definite statement, however.  Sheen v. Bil-Jax, Inc., No.

93 C 6390, 1993 WL 524211, at *1 (N.D. Ill. Dec. 10, 1993).
Rather, the pleading must be "incomprehensib[le]." Id. Because
motions under Rule 12(e) raise the prospect of "increase[ing]
the time and effort to refine the pleadings without
circumscribing the scope of discovery or defining the issues,"
Hicks v. Arthur, 843 F. Supp. 949, 959 (E.D. Pa. 1994), they
"are not favored by the courts," Innovative Digital Equip., Inc.
v. Quantum Tech., Inc., 597 F. Supp. 983, 989 (N.D. Ohio 1984).
Whether to grant a motion for a more definite statement is left
to the court's sound exercise of its discretion. Old Time
Enters. v. Int'l Coffee Corp., 862 F.2d 1213, 1217 (5th Cir.
1989); see also Hodgson v. Va. Baptist Hosp., Inc., 482 F.2d
821, 824 (4th Cir. 1973).

As Plaintiffs rightly point out, a complaint may not simply
allege that "products for sale . . . infringe" a particular
patent. See Agilent Techs., Inc. v. Micromuse, Inc., No. 04
Civ. 3090, 2004 WL 2346152, at *6 (S.D.N.Y. Oct. 19, 2004).
Moreover, alleging broadly that all of an alleged infringer's
products infringe and then providing examples of specifically
infringing products is not enough to survive a motion under
12(e). Static Control Components, Inc. v. Future Graphics, LLC,
No. 07cv00007, 2008 WL 160827, at *2 (M.D.N.C. Jan. 15, 2008).
Fu Jian's counterclaim against SV International's "products,
including wooden Newel Posts . . . , which are covered by one or

more claims of the Newel Post Patent" clearly approaches making a claim against all of SV International's products.

In a tacit admission of this problem, Fu Jian's brief expressly limits its counterclaims to a specific category of products at issue: "SV newel posts." (Doc. 49 at 17.) By so limiting its allegations, Fu Jian's counterclaims, while not a model of clarity, comply with the Federal Rules. See Symbol Techs., Inc. v. Hand Held Prods., Inc., No. Civ-A 03-102-SLR, 2003 WL 22750145, at *3 (D. Del. Nov. 14, 2003) (denying a motion for a more definite statement where the complaint identified a "finite number of infringing products"). Moreover, Fu Jian's counterclaim (as limited) conforms to the example forms approved by the Federal Rules of Civil Procedure. Fed. R. Civ. P. App'x Form 18 (giving an example allegation that the patent infringer "has infringed and is still infringing [the patent] by making, selling, and using *electric motors* that embody the patented invention"); see also Digital Tech. Licensing LLC v. Sprint Nextel Corp., No. 07-5432, 2008 WL 4068930, at *2 (D.N.J. Aug. 27, 2008) (Shipp, Mag. J.) ("Form 18 does not require that the Plaintiff specify the exact product name, model number, or manner in which the offending products infringe upon the patent(s) at issue."). Since Fu Jian's counterclaim achieves this level of particularity, the court cannot say that the claim is incomprehensible. See Keranos, LLC

v. Analog Devices, Inc., No. 2:10-cv-207-TJW, 2011 WL 4027427, at *5 (E.D. Tex. Sept. 12, 2011) ("A patent infringement complaint that pleads at least the facts in Form 18 must be sufficient to state a claim under Rule 8(a) because to hold otherwise would render . . . [Rule] 84[, which points practitioners to the example forms in the Appendix,] a nullity."). Indeed, a review of the docket in SV International I reveals that SV International answered the identical allegation in that counterclaim without requesting a more definite statement. Compare Answer to Complaint and Counterclaims at 7, SV Int'l Corp. (No. 1:07cv754), Doc. 15, with Answer to Counterclaim at 1, SV Int'l Corp. (No. 1:07cv754), Doc. 17.[17] Any additional information Plaintiffs seek (such as product numbers of its allegedly infringing products) can be obtained through discovery. See Sheen, 1993 WL 524211, at *1 (denying moving party's request for a more definite statement even though the complaint failed to reference the model numbers and names of products involved in a products liability lawsuit because the information was available through discovery); Beery v. Hitachi Home Elecs., 157 F.R.D. 477, 480 (C.D. Cal. 1993) ("If the detail sought by a motion for more

---

[17] Before the cases were consolidated, Plaintiff ECMD also answered an identical allegation in SV International I. Compare First Amended Complaint and Demand for Jury Trial at 2, Fu Jian Quanyu Indus. Co. (No. 1:07cv905), Doc. 20, with Answer to First Amended Complaint at 1, Fu Jian Quanyu Indus. Co. (No. 1:07cv905), Doc. 22.

definite statement is obtainable through discovery, the motion should be denied."). Therefore, Plaintiffs' motion for a more definite statement will be denied.

## III. CONCLUSION

For the reasons set forth above,

IT IS THEREFORE ORDERED that the motions of SV International and ECMD to dismiss Fu Jian's counterclaim for patent infringement pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Fu Jian's counterclaim for breach of contract pursuant to Federal Rule of Civil Procedure 12(b)(1), and for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) (Doc. 44) are DENIED.

                              /s/    Thomas D. Schroeder
                              United States District Judge

October 26, 2011